In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Anne E. BROWN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Anne E. BROWN, Respondent.

Supreme Court

*No. 2011AP142–D.—Decided May 18, 2012.*

2012 WI 51

(Also reported in 814 N.W.2d 172.)

¶ 1. PER CURIAM. On January 24, 2011, the Office of Lawyer Regulation (OLR) filed a complaint

against Attorney Anne E. Brown alleging eight counts of professional misconduct committed in two separate client matters. On April 26, 2011, the OLR amended the complaint to add two misconduct charges related to a third client.

¶ 2. The parties filed a comprehensive joint stipulation including recommended discipline. Attorney Brown filed an addendum explaining that she suffered from medical issues stemming from surgery that had affected her ability to practice law.

¶ 3. On August 18, 2011, Referee Allan Beatty issued a brief report in which he accepted the joint stipulation and, consistent with the stipulation, recommended a two-year suspension of Attorney Brown's license to practice law in Wisconsin.

¶ 4. On December 1, 2011, this court issued an order seeking additional information from the parties relating to the proposed discipline. On December 12, 2011, the OLR filed a written response setting forth legal authority in support of the recommended discipline. On December 27, 2011, Attorney Brown filed a written response stating that she has agreed to the proposed discipline and that her primary goal is to protect her reputation and integrity with the bar and in her community. She provided additional information about her physical limitations and their effect on her ability to practice law.

¶ 5. No appeal has been filed so we review the matter pursuant to SCR 22.17(2).[1] We conclude that Attorney Brown's ethical violations warrant the stipu-

---

[1] SCR 22.17(2) states:

 If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional

lated two-year suspension of her license to practice law. We agree with the OLR's recommendation that no costs shall be imposed in this matter.

¶ 6. Attorney Brown was admitted to practice law in Wisconsin on September 18, 1984. Attorney Brown most recently practiced law in Eau Claire. This court temporarily suspended Attorney Brown's license to practice law on April 24, 2012, for her willful failure to cooperate in OLR investigations concerning her conduct in two matters unrelated to this case.

¶ 7. Attorney Brown's other prior discipline includes two private reprimands. In 2006 Attorney Brown received a private reprimand pursuant to SCR 22.09 for violating SCRs 20:1.3, 20:1.4(a), 20:1.5(a), and 20:1.16(d). Private Reprimand of Anne E. Brown, 2006–16. In 2007 Attorney Brown received a second SCR 22.09 private reprimand for violating SCRs 20:1.4(a) and 20:1.16(d). Private Reprimand of Anne E. Brown, 2007–13.

¶ 8. As noted, the referee accepted the stipulation and adopted the facts and conclusions of law contained therein in lieu of conducting an evidentiary hearing. Having independently reviewed the record, we adopt those factual findings and legal conclusions and we summarize them here.

¶ 9. The OLR's amended complaint alleged misconduct relating to Attorney Brown's representation of J.B. In May 2008, J.B. retained Attorney Brown to represent J.B. in connection with her divorce proceeding. On August 2, 2008, J.B. entered into a fee agreement with Attorney Brown. J.B. agreed to pay Attorney Brown an advanced fee of $3,000 and to be billed at a

findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

529

rate of $175 per hour for attorney services and $90 per hour for paralegal assistance. J.B. paid Attorney Brown the $3,000 advanced fee. Attorney Brown did not deposit the fee into her trust account.

¶ 10. Prior to their divorce, J.B and her former spouse had received an insurance settlement in connection with water damage to their home. On June 24, 2008, Attorney Brown received a check in the amount of $4,681.51 payable to her trust account reflecting the settlement funds that remained after certain home repairs were completed. On June 30, 2008, Attorney Brown deposited the $4,681.51 check into her trust account. With that deposit, the balance in Attorney Brown's trust account was $4,694.71.

¶ 11. All of the ensuing trust account transactions will not be enumerated in this opinion but, between July 2008 and April 2009, Attorney Brown made disbursements from the trust account for legitimate repairs or services relating to the parties' home, but she also improperly withdrew funds from the trust account for herself and for others when she should have been holding the funds in trust for J.B. She also made improper deposits into the trust account from her business account and personal account.

¶ 12. J.B.'s divorce settled on October 13, 2008. J.B. was awarded the insurance proceeds that remained after all of the repair expenses had been paid.

¶ 13. On December 1, 2008, J.B. called Attorney Brown and asked that the remaining insurance proceeds, which totaled approximately $2,000, be distributed to her. Attorney Brown informed J.B. that J.B. owed $1,700 in additional legal fees.[2] During the phone

---

[2] On November 19, 2008, Attorney Brown prepared an invoice for her representation of J.B. showing a total of

call Attorney Brown also advised J.B. that she did not have funds to distribute at that time. She claimed that someone, possibly a family member, was stealing from Attorney Brown's trust account and that she was going to discuss it with her banker. Attorney Brown agreed to release the $2,000 in remaining insurance proceeds to J.B. on the condition that J.B. pay Attorney Brown's legal fees in full by December 31, 2008. Attorney Brown told J.B. that she would reimburse J.B. one-half of the $2,000 on December 2, 2008, and would pay the remaining half on December 5, 2008.

¶ 14. On December 2, 2008, Attorney Brown gave J.B. an envelope containing a check from Attorney Brown's trust account payable to "J.B." in the amount of $550. This check was dated December 2, 2008. The envelope also contained a check post-dated December 5, 2008, payable to "J.B." in the amount of $1,450. At the time she provided this envelope to J.B., Attorney Brown should have been holding $2,031.49 of remaining insurance proceeds in her trust account. That same day, J.B. tried to cash the first check, but the bank refused payment because there were insufficient funds in Attorney Brown's trust account.

¶ 15. On December 5, 2008, Attorney Brown apparently prepared an updated invoice reflecting J.B.'s unpaid balance as $1,790.47.

¶ 16. On December 5, 2008, J.B. deposited the second check. It was initially refused for insufficient funds. The bank later paid it on December 30, 2008. That same day, Attorney Brown deposited $450 into her

$4,820.46 in attorney's fees and costs, and reflecting a balance due of $1,745.46. Attorney Brown did not, at that time, send J.B. a billing statement.

trust account from a check drawn on her business account. This brought the balance in Attorney Brown's trust account to $495.09.

¶ 17. On December 11, 2008, Attorney Brown deposited $2,000 cash into her trust account. On December 15, 2008, Attorney Brown deposited $1,500 cash into her trust account. The balance of Attorney Brown's trust account on December 15, 2008, was $3,995.09.

¶ 18. On December 17, 2008, Attorney Brown issued trust account check number 1022 in the amount of $1,500 to "Anne E. Brown." On December 30, 2008, Attorney Brown issued trust account check number 1122 in the amount of $200 to "Anne E. Brown." On January 2, 2009, the closing balance in Attorney Brown's trust account was $845.09.

¶ 19. On January 6, 2009, Attorney Brown sent J.B. a letter as a follow-up to their conversation regarding the November 19, 2008 billing statement. Attorney Brown reminded J.B. that Attorney Brown had agreed the legal bill would be paid in full by December 31, 2008. Attorney Brown also disclosed three discrepancies from the billing statement, resulting in $61.50 in excess of what should have been billed.[3]

¶ 20. On February 4, 2009, the closing balance in Attorney Brown's trust account was $45.09. At that time, the first check payable to J.B. in the amount of $550 had still not cleared the bank. It finally cleared Attorney Brown's trust account on April 6, 2009.

---

[3] Attorney Brown's January 6, 2009 letter also referenced items that did not appear on J.B.'s bill which totaled 2.1 hours of Attorney Brown's time, or $367.50 that should have been billed, resulting in a claimed amount of $2,044.97 due and owing. However, Attorney Brown agreed to settle J.B.'s bill for $1,738.97 on or before January 12, 2009.

¶ 21. Attorney Brown later conceded in letters to the OLR that she did not have sufficient funds in the trust account for J.B. "because I had not been keeping track of the account." She also acknowledged that she had used funds from the account for her own personal use and she was "not honest with [J.B.] regarding other persons having access to [the] trust account and potentially stealing from it. It was not a true statement." Attorney Brown then failed to respond to several letters from the OLR seeking information and, after obtaining an extension, failed to file a response to the OLR's questions.

¶ 22. On May 12, 2009, at the OLR's request, this court issued an order requiring Attorney Brown to show cause, in writing, why her license to practice law should not be temporarily suspended. Attorney Brown failed to respond and her license was temporarily suspended by order dated July 16, 2009. Attorney Brown then provided information to the OLR and her license was reinstated by this court on August 5, 2009. Attorney Brown subsequently entered into the joint stipulation with the OLR wherein she admitted various violations of the recordkeeping aspects of the trust account rules.

¶ 23. As noted, the referee concluded and we agree that Attorney Brown committed misconduct in her handling of the J.B. matter as alleged in the amended complaint as follows: (1) by failing to hold in trust and instead using for her own purposes at least $4,636.42 of the $4,681.51 in insurance proceeds belonging to J.B. and her former husband, Attorney Brown violated SCRs 20:1.15(b)(1)[4] and

---

[4] SCR 20:1.15(b)(1) states: Separate account.

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the

20:8.4(c);[5] (2) by failing to hold J.B.'s advanced fee of $3,000 in trust until earned, Attorney Brown violated SCR 20:1.15(b)(4);[6] (3) by falsely informing J.B. that she did not have the insurance funds available to distribute because someone else had been stealing from her trust account, Attorney Brown violated SCR 20:8.4(c); (4) by failing to maintain a transaction register, an individual client ledger, and a monthly reconciliation report, Attorney Brown violated SCRs 20:1.15(f)(1)a., b., and g.;[7] (5) by certifying to the State

lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[5] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[6] SCR 20:1.15(b)(4) states: Unearned fees and cost advances.

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[7] SCRs 20:1.15(f)(1)a., b. and g. state as follows:

(f) Record-keeping requirements for all trust accounts.

(1) Draft accounts. Complete records of a trust account that is a draft account shall include a transaction register; individual client ledgers for IOLTA accounts and other pooled trust accounts; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:

a. Transaction register. The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:

1. the date, source, and amount of all deposits;

Bar of Wisconsin in her fiscal 2008 and 2009 dues statements that she had complied with each of the recordkeeping requirements set forth in SCR 20:1.15(f), when she was not maintaining a complete transaction register, client ledgers or performing monthly reconcili-

2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;

3. the date and amount of every other deposit or deduction of whatever nature;

4. the identity of the client for whom funds were deposited or disbursed; and

5. the balance in the account after each transaction.

b. Individual client ledgers. A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

. . .

g. Reconciliation reports. For each trust account, the lawyer shall prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days. Each reconciliation report shall show all of the following balances and verify that they are identical:

1. the balance that appears in the transaction register as of the reporting date;

2. the total of all subsidiary ledger balances for IOLTA accounts and other pooled trust accounts, determined by listing and totaling the balances in the individual client ledgers and the ledger for account fees and charges, as of the reporting date; and

3. the adjusted balance, determined by adding outstanding deposits and other credits to the balance in the financial institution's monthly statement and subtracting outstanding checks and other deductions from the balance in the monthly statement.

ations, Attorney Brown filed false certificates with the State Bar, in violation of SCR 20:1.15(i)(4);[8] and (6) by failing to respond timely to the OLR's multiple written requests for information regarding this investigation, Attorney Brown violated SCRs 22.03(2) and 22.03(6),[9] enforced by SCR 20:8.4(h).[10]

¶ 24. The OLR's amended complaint also alleged misconduct committed in connection with Attorney Brown's representation of C.T. C.T. retained Attorney

---

[8] SCR 20:1.15(i)(4) states: Suspension for non-compliance.

The failure of a state bar member to file the certificate is grounds for automatic suspension of the member's membership in the state bar in the same manner provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action.

[9] SCRs 22.03(2) and 22.03(6) provide as follows:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[10] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

Brown in early August 2008 to represent him in a custody matter. On August 5, 2008, C.T. paid Attorney Brown an advanced fee of $2,500 by credit card payment. Attorney Brown did not provide C.T. with a receipt. Attorney Brown explained to C.T. that her time was billed at a rate of $175 per hour and that her assistant's time was billed at $90 per hour, but no written fee agreement was executed. Attorney Brown did not deposit C.T.'s advanced fee into her trust account, but rather into her business bank account thereby commingling C.T.'s funds with her own funds. On August 5, 2008, following the $2,500 deposit, the balance in Attorney Brown's business account was $3,476.85. Attorney Brown entered an appearance in the case on August 14, 2008. On August 25, 2008, Attorney Brown attended a hearing in the C.T. matter.

¶ 25. By September 3, 2008, the closing business account had a negative balance of -$725.85, thereby exhausting all of C.T.'s funds in Attorney Brown's business account. On November 25, 2008, Attorney Brown sent C.T. a billing statement reflecting that Attorney Brown had earned $1,214.99 of the $2,500 fee. On December 1, 2008, C.T. sent Attorney Brown an e-mail pointing out an error on the bill and requesting a refund of the $1,285.12 unearned fee. Attorney Brown responded to C.T. stating, "I will refund the correct amount to your credit card. It generally takes about 3 business days." Attorney Brown then failed to refund C.T.'s fee.

¶ 26. C.T. called Attorney Brown to discuss the matter. On December 24, 2008, after C.T. informed Attorney Brown he was going to file a grievance with the Office of Lawyer Regulation, Attorney Brown went to C.T.'s bank and deposited $1,285.12 in cash into C.T.'s bank account.

¶ 27. The referee concluded, and we agree, that Attorney Brown committed misconduct in her handling of the C.T. matter as follows: (1) by failing to enter into a written fee agreement with C.T., from whom she had accepted a $2,500 advanced fee, Attorney Brown violated SCR 20:1.5(b)(1);[11] and (2) by failing to hold C.T.'s advanced fee payment in trust until earned, Attorney Brown violated SCR 20:1.15(b)(4).

¶ 28. The remaining allegations in the OLR's amended complaint involve Attorney Brown's representation of A.M. In January 2010 A.M. hired Attorney Brown to represent A.M. in her divorce. A.M. paid Attorney Brown an advanced fee of $2,580 using her mother's credit card. No written fee agreement was executed. Attorney Brown did not deposit the advanced fee into her trust account. On January 19, 2010, Attorney Brown deposited the $2,580 advanced fee into her business account. As of February 1, 2010, Attorney Brown's business account was overdrawn by $1,484.50. Therefore, as of that date, Attorney Brown no longer had any of A.M.'s advanced fee on deposit in Attorney Brown's business account.

¶ 29. In February 2010 A.M. decided to hire a new attorney because of her concerns regarding communication with Attorney Brown and because Attorney

[11] SCR 20:1.5(b)(1) states:

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, except before or within a reasonable time after commencing the representation when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

Brown had informed A.M. she was having some health problems. On February 26, 2010, Attorney Brown sent A.M. a bill showing that Attorney Brown had earned $1,377.07 of the fee, along with a stipulation and order for substitution of attorney for successor counsel. Attorney Brown informed A.M. she would refund $1,202.93, but Attorney Brown did not do so until July 27, 2010.

¶ 30. Subsequently, Attorney Brown failed to respond to several requests for information from the OLR regarding this matter. Accordingly, at the OLR's request, this court issued an order to show cause why Attorney Brown's license to practice law should not be suspended for willful failure to cooperate in an OLR investigation concerning her conduct. On November 2, 2010, Attorney Brown sent the OLR a letter with responses to the OLR's 13 inquiries, but failed to provide responses to the OLR's document requests. Attorney Brown sent a letter the same day advising this court that she had provided the information the OLR had requested, despite the fact that she had not sent the supporting documents the OLR had repeatedly requested. The OLR finally received the documents from Attorney Brown on November 15, 2010. Accordingly, the OLR requested and this court granted the OLR's request to withdraw the motion seeking temporary suspension of Attorney Brown's license.

¶ 31. The referee concluded, and we agree, that (1) by failing to hold in trust the $2,580 advanced fee paid by A.M., and instead depositing such funds to her business bank account, Attorney Brown violated SCRs 20:1.15(b)(1) and 20:1.15(b)(4); and (2) by failing to respond timely to the OLR's multiple written requests for information regarding the A.M. investigation, Attorney Brown violated SCRs 22.03(2) and 22.03(6), enforced via SCR 20:8.4(h).

¶ 32. With respect to appropriate discipline, Attorney Brown included a statement with her stipulation explaining that during the relevant time period, she had experienced a number of medical conditions that presented challenges to her in managing her law practice stemming from complications of surgery and other medical conditions that caused, inter alia, chronic pain and decreased stamina. Attorney Brown explains that her medical conditions made it extremely difficult to manage her day-to-day affairs. The OLR does not seek restitution or costs in this case.

¶ 33. After fully reviewing the matter we conclude that the two-year suspension, as the parties stipulated and as recommended by the referee, is appropriate discipline in this matter. We note that this suspension will require Attorney Brown to undergo the formal reinstatement procedure in SCRs 22.29–22.33, in which she will be required to demonstrate, among other things, that she has a proper understanding of and attitude toward the standards that are imposed upon members of the bar in this state and that she will act in conformity with those standards. *See* SCR 22.29(4)(f). Consistent with the OLR's recommendation, no costs will be imposed. Therefore,

¶ 34. IT IS ORDERED that the license of Anne E. Brown to practice law in Wisconsin is suspended for a period of two years, effective the date of this order.

¶ 35. IT IS FURTHER ORDERED that Anne E. Brown shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.